# RECORD NO. 15-1124

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

_____

## SHAREL FARMER,

*Plaintiff–Appellant*

v.

## EAGLE SYSTEMS AND SERVICES, INCORPORATED;
## DATA SOLUTIONS & TECHNOLOGY (DST), INC.

Defendant–Appellee

_____

## Appeal from the US District Court for  the
## Eastern District of North Carolina

_____

## BRIEF OF APPELLANT

_____

**Mario White**
*Counsel for Plaintiff-Appellant*
**P. O. Box 957**
**Clinton, NC 28329**
**Phone:  (910) 590-3300**
**Facsimile:  (910) 590-2928**

**Ralph T. Bryant, Jr.**
*Counsel for Plaintiff-Appellant*
**P.O. Box 723**
**Newport, NC 28570**
**(252) 626-3267 Telephone**
**(910) 590-2928  Facsimile**

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __15-1124__    Caption: __SHAREL FARMER v. EAGLE SYSTEMS, et. al__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Sharel Farmer__

(name of party/amicus)

_____

 who is _____Plaintiff-Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.     Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.     Does party/amicus have any parent corporations?                ☐ YES ☑ NO
       If yes, identify all parent corporations, including grandparent and great-grandparent
       corporations:

3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
       other publicly held entity?                        ☐ YES ☑ NO
       If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)   ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?        ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Mario M. White           Date:    2/17/2015

Counsel for: Sharel Farmer, Plaintiff-Appellant

# CERTIFICATE OF SERVICE

**************************

I certify that on   2/17/2015   the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Eagle Systems and Services Incorporated
Smith, Anderson, Blount, Dorsett,...L.L.P.
Kerry A. Shad
Jang H. Jo.
Post Office Box 2611
Raleigh, North Carolina 27602-2611

Attorneys for Data Solutions & Technology (DST), Inc.
Justin N. Davis
Nancy B. Paschall
MULLEN HOLLAND & COOPER, P.A.
PO Box 488
Gastonia, North Carolina 28053

/s/ Mario M. White                  2/17/2015
    (signature)                              (date)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...........................................................ii

STATEMENT OF JURISDICTION.............................................. 1

STATEMENT OF THE ISSUE ................................................... 2

STATEMENT OF THE CASE .................................................... 3

SUMMARY OF THE ARGUMENT ........................................... 12

STANDARD OF REVIEW ........................................................ 15

ARGUMENT ........................................................................... 16

I.

The District Court Erred When It Held That Plaintiff's Report of Theft of Federal Government Property by The Warehouse Supervisor of a Supply Depot Federal Contractor, is Not Protected Conduct Under the FCA Anti-Retaliation Provisions. ................................................... 16

A.

The District Court Erred When It Only Applied the Distinct Possibility Test..................................................................... 23

B.

The Purposes of The False Claims Act are Advanced by a Ruling That Protected Activity Includes Reporting Theft of Federal Government Property at a Military Supply Depot Being Operated by a Federal Government Contractor .................. 24

II.

The District Court Erred When It Failed to Recognize that the Duty Of Reasonable Care Under North Carolina Law is a Common Law Duty ................................................................................... 26

III

The District Court Erred When It Dismissed Plaintiff's Civil Conspiracy Claim Based Upon Its Erroneous Dismissal Of The Plaintiffs FCA Retaliation Claim................................................................... 27

CONCLUSION ...................................................................... 29

CERTIFICATE OF COMPLIANCE .......................................... 30

CERTIFICATE OF FILING AND SERVICE............................. 31

i

## TABLE OF CASES AND AUTHORITIES

34 W. Page Keeton et al., Prosser and Keeton on the Law of Tort § 53 (5th ed. 1984)……………………………………………… p. 27

28 U.S.C. § 1291……………………………………………….. p. 1

28 U.S.C. § 1331……………………………………………….. p. 1

31 U.S.C. § 3730(h) …………………….………………………. p. 1, 12, 16, 17, 23

31 U.S.C. § 3729(a)(1)……………………………………….. p. 20-22

Am. Nat'l Red Cross v. S.G., 505 U.S. 247, 263 (1992) ………. p. 23

Brewster v. Gage, 280 U.S. 327, 337 (1930) …………………….. p. 23

Commodity Futures Trading Comm'n v. Kimberlynn Creek Ranch, Inc., 276 F.3d 187, 191 (4th Cir. 2002) ..…………………………….. p. 15

Eberhardt v. Integrated Design & Const., Inc., 167 F.3d 861, 866 (4th Cir. 1999)……………………………………………….. p. 17

GAO-08-644T Internet Sales: Undercover Purchases on eBay and Craigslist Reveal a Market for Sensitive and Stolen U.S. Military Items. (4/10/2008). ……………………………………………… p. 25.

Glynn v. EDO Corp., 710 F.3d 209, 215 (4th Cir. 2013) ……………………………………………........................................... p. 19

Gonzales v. State of Md. Dep't of Health & Mental Hygiene, 28 Fed. App'x 324, 324 (4th Cir. 2004)……………………………. p. 15

Graham County Soil & Water Conservation Dist. v United States ex rel. Wilson, 545 U.S. 409, 125 S. Ct. 2444, 162 L. Ed. 2d 390 (2005)………….…………………….. p. 13, 18, 19.

Halasa v. ITT, 690 F.3d 844; 847-848 (7th Cir. 2012)……………. p. 12, 16, 19

http://seattletimes.com/html/localnews/2002164636_webgoggles29.html................................................................. p. 25

ii

http://community.seattletimes.nwsource.com/archive/?date=19971002&slug=2563776....................................................... p. 25

In re Coleman, 426 F.3d 719, 724 (4th Cir. 2005)………………… p. 15.

Johnson v. Sawyer , 4 F.3d 369, 378 (5th Cir. Tex. 1993)
………………………………………………………………… p. 27

Korb v. Lehman, 919 F.2d 243, 246 (4th Cir. 1990) ……………… p. 15

Mann v. Heckler & Koch Defense, Inc., 630 F.3d 338, 343-44 (4th Cir. 2010)………………………………………………………… p. 19.

McKenzie v. BellSouth Telecomms., Inc., 219 F.3d 508, 514-16 (6th Cir. 2000)…………………………………………………… p. 19

Reiter v. Sonotone Corp., 442 U.S. 330, 339 (1979)……………… p. 23

Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.3d 324, 325 (4th Cir. 1989)…………………………………………………………. p. 15

Shope v. Boyer, 150 S.E.2d 771 (N.C. 1966). ……....................... p. 28

Stein v. Asheville City Bd. of Educ., 360 N.C. 321, 328 (2006)…………………………………………………………….. p. 26

Stone v. INS, 514 U.S. 386, 397 (1995) …………………………. p. 23

Toomer v. Garrett, 574 S.E.2d 76, 92 (N.C. Ct. App. 2002)
…………………………………………………………………. p. 28

USA v. Williams,  U.S. District Court, Arizona (Tucson Division), 4:08-cr-00600-JMR-BPV-1 (5/7/2008)…………………………. p. 25
.

Young v. CHS Middle East, LLC, No. 13-2342, 2015 U.S. App. LEXIS 8732 (4th Cir., May 27, 2015) ………….. p. 12, 13, 15, 16, 17, 18, 24,

iii

STATEMENT OF JURISDICTION

The United States District Court for the Eastern District of North Carolina ("District Court") had subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1331. The claims arose under the laws of the United States, specifically the False Claims Act's anti-retaliation provision, codified at 31 U.S.C. § 3730(h) . This Court has jurisdiction pursuant to 28 U.S.C. § 1291 to hear this appeal from the District Court's final decision on January 9 2015, granting both Appellee's Federal Rule of Civil Procedure Rule 12(b)(6) motion to dismiss. On February 4 2015, Appellant timely filed a notice of appeal with the Clerk of the District Court.

# STATEMENT OF THE ISSUES

### I.

WHETHER THE DISTRICT COURT ERRED WHEN IT HELD THAT
PLAINTIFF'S REPORT OF THEFT OF FEDERAL GOVERNMENT
PROPERTY BY THE WAREHOUSE SUPERVISOR OF A SUPPLY DEPOT
FEDERAL CONTRACTOR, IS NOT PROTECTED CONDUCT UNDER THE
FCA ANTI-RETALIATION PROVISIONS. …………….…..     p. 16

### A.

WHETHER THE DISTRICT COURT ERRED WHEN IT ONLY APPLIED
THE DISTINCT POSSIBILITY TEST………………….…     p. 23

### B.

WHETHER PURPOSES OF THE FALSE CLAIMS ACT ARE
ADVANCED BY A RULING THAT PROTECTED ACTIVITY
INCLUDES REPORTING THEFT OF FEDERAL GOVERNMENT
PROPERTY AT A MILITARY SUPPLY DEPOT BEING OPERATED BY
A FEDERAL GOVERNMENT CONTRACTOR………...     p. 24

### II.

WHETHER THE DISTRICT COURT ERRED WHEN IT FAILED TO
RECOGNIZE THAT THE DUTY OF REASONABLE CARE UNDER NORTH
CAROLINA LAW IS A COMMON LAW DUTY……………….     p. 26.

### III

WHETHER THE DISTRICT COURT ERRED WHEN IT DISMISSED
PLAINTIFF'S CIVIL CONSPIRACY CLAIM BASED UPON ITS ERRONEOUS
DISMISSAL OF THE PLAINTIFFS FCA RETALIATION
CLAIM……………………………………………………….…     p. 28

## STATEMENT OF THE CASE

The plaintiff-appellant's complaint, accepted as true, alleges as follows:

Plaintiff Sharell Farmer[1] first started working for defendant Eagle Systems on or about February 27 2012. He worked at the Fort Bragg North Carolina location. His job title was Order Filler. Plaintiff was an employee of Eagle Systems under a joint federal contract with defendant Eagle Systems and defendant DST. Plaintiff was under the direct supervision of DST management. The defendants were joint employers of the plaintiff. J.A. 4.

Each defendant is a federal government contractor. The defendants jointly operate a supply warehouse for the federal government at Fort Bragg N.C. Under the terms of the federal contract, the defendants are responsible for keeping an accurate inventory of the items in the warehouse and distributing those items to army personnel pursuant to proper policies and procedures, and consistent with the terms of the contract and all applicable laws. J.A. 4.

Plaintiff worked at the Central Issue Facility at Ft. Bragg. The facility stored federal government property, and either issues property to or receives property from military personnel pursuant to military policies, procedures, and applicable law. The property is property of the federal government. J.A. 4.

---

[1] Plaintiff's original complaint misspelled plaintiff's first name as Sharel. The complaint was amended for the sole purpose of correcting the spelling of the first name to Sharell. The caption of the action in the lower court was never changed to reflect the corrected spelling of plaintiff's first name.

As an Order Filler plaintiff was responsible for a variety of tasks associated with the filling or transferring of orders for finished goods from merchandise stored at the facility.  An Order Filler keeps records of outgoing orders, requisitions additional stock or reports short supplies to supervisor. The Order Filler also assists with inventory as required. J.A. 4.

On or about August 2 2012, plaintiff and other Eagle employees, witnessed the theft of government property by Eagle and DST employees.  In particular, plaintiff witnessed the warehouse supervisor and his assistant participate in the theft of several night vision goggles that were federal government property and that had been entrusted to the defendants to manage and distribute in accordance with federal law, rules, regulations and contracts.  These night vision goggles were given to a person for that person's personal use.  There was no legitimate reason to give the goggles away to the person. J.A. 4.

Subsequent to witnessing the incident, plaintiff was contacted by Roy Fischel who was the Project Manager for Eagle Systems Inc.  Mr. Fischel inquired as to whether plaintiff had witnessed the incident and whether he witnessed theft of government property. Plaintiff advised him that he had witnessed the incident and he had witnessed theft of government property.   Mr. Fischel required that plaintiff write a statement regarding the theft of government property that he witnessed. J.A. 4.

On August 6 2012 the plaintiff wrote a statement to Eagle Systems, addressed to James Roth, stating in pertinent part, as follows:

> An incident occurred on August 2, 2012 in the Warehouse Bay One. The supervisor of the Bay, Keith Armstrong, ordered the stock clerk, Angela Calloway, to give some goggles to an ITT employee that works in Bay Two. …. We were all working in the DLA section of the warehouse when it took place. It was several pair of goggles that were given away, all government property. …. We know the seriousness of stealing and do not want this to fall back on us. Loss prevention effects everybody within both companies, no matter if you are DST or Eagle. We all signed contracts stating we would make light of any theft or stealing. We are worried about retaliation from the supervisor of the warehouse and would like to be removed from the environment of Bay One. Thank you for your time and attention. J.A. 4.

When Fischel and Eagle Systems received the statement from plaintiff, they failed to keep the statement confidential. Mr. Fischel and Eagle Systems immediately disseminated the information, including plaintiff's identity, to Keith Armstrong and DST. J.A. 5.

From the day after he reported the theft, until he left defendants' employment on or about April 15 2013, plaintiff was subjected to persistent and numerous incidences of retaliation, ridicule, threats, intimidation and harassment. These incidents made his work environment unbearable. J.A. 5.

Plaintiff began to experience retaliation and harassment immediately after submitting the statement. The very next day after reporting the theft, the

5

supervisor that plaintiff reported had committed the theft, Keith Armstrong, began a campaign of retaliation against the plaintiff.  When plaintiff came into work,  his workstation had been moved by Mr. Armstrong, so as to isolate him from all other employees. His workstation had been moved from the normal area with the other employees, to the entrance walkway area.  No one has ever worked in the entrance walkway. This was done for the sole propose of retaliating and harassing against the plaintiff because of the report of theft of government property. J.A. 5.

    In addition,  Armstrong would come into plaintiff's work area and stare at plaintiff in a threatening manner for minutes, numerous times a day.  Plaintiff felt very unsafe and uncomfortable in that environment.  He reported the retaliation and harassment to human resources and requested that he be moved out of Mr. Armstrong's area.  J.A. 5.

    Plaintiff was eventually moved out of Mr. Armstrong's area, but he was moved to a location run by Armstrong's friend, Larry Bullock.  This move occurred sometime around the second to third week in August 2012. J.A. 5.

    Larry Bullock was an Operations Manager for DST.  During plaintiff's first day at Mr. Bullock's location,  Bullock verbally chastised plaintiff for writing the statement notifying management of the theft of government property.  Bullock told plaintiff that he had heard about him,  he knew what he had done and that he was

6

not going to have any of that "bullshit".  Bullock told plaintiff he would be watching him. J.A. 6.

Mr. Bullock forced plaintiff to work a location that was isolated from all of the other employees.  Bullock would come out of his office a number of times on a daily basis, and just stare at plaintiff in a threatening manner for three or four minutes at a time. J.A. 6.

Another DST Supervisor, Randall Hyde,  threatened to tow plaintiff's  car out of the parking lot for no legitimate reason. Hyde would also drive around plaintiff's car for no reason and drive off as plaintiff came out to his car. Hyde engaged in this conduct as harassment and retaliation for plaintiff's report of theft of government property. J.A. 6.

Mr. McAlpine was a Project Director. Plaintiff complained to McAlpine that he was being harassed because of his report of theft of government property. McAlpine did not stop the harassment and retaliation. J.A. 6.

Bullock harassed plaintiff by issuing plaintiff a disciplinary write-up over ten times for frivolous and baseless reasons.  Each write-up was subsequently dismissed by McAlpine, but the harassment continued after each dismissed write-up. J.A. 6.

Bullock issued plaintiff a disciplinary write-up for helping a female soldier bring her bag in. Bullock told plaintiff that he was being sexist for helping the

female soldier. When plaintiff questioned the write up, Bullock's supervisor, McAlpine dismissed the write-up. J.A. 6.

Bullock issued plaintiff a disciplinary write-up for using his cell phone while on break.  McAlpine dismissed the write-up. J.A. 6.

Bullock issued plaintiff a disciplinary write-up for going to his car on a break.  McAlpine dismissed the write-up. J.A. 6.

Bullock accused plaintiff of being on drugs in front of several employees. Plaintiff volunteered for a drug test but no test was ever given. J.A. 6.

Bullock issued plaintiff a disciplinary write-up which stated that Bullock observed plaintiff "not working". The write-up was dismissed. J.A. 7.

Bullock and Janice Joyner-Watson issued plaintiff a disciplinary write-up for missing one day of work due to illness.  The company policy provides for three days before written documentation is required. The write-up was dismissed. J.A. 7.

Bullock sent plaintiff home from work without pay because plaintiff would not pick up trash all day in below freezing weather. The write-up was dismissed. J.A. 7.

To protect himself, plaintiff went to Mr. McAlpine and requested a copy of the write-ups. McAlpine said he could not give him a copy. McAlpine told plaintiff, "I can tell that you think you are smart, college boy".  "I don't have a

8

copy and if I did I wouldn't give them to you, I know what you trying to do."

J.A.7.

Throughout this time, plaintiff notified Eagle and DST upper management about the harassment and retaliation. He told both Liz Day and Mary Connelly, who were Human Resources managers for Eagle, about the harassment and retaliation. But, the corporate defendants did not stop the harassment. Instead, the corporate defendants condoned, maintained and ratified the harassment that was occurring. J.A. 7.

On the 5th of April 2013 plaintiff was off of work due to a previously approved requested vacation leave to be off for his son's birthday. While off from work, plaintiff started getting phone calls from work stating that he was supposed to be at work. When plaintiff contacted his direct supervisor, he stated that he knew plaintiff was on approved leave. J.A. 7.

When plaintiff came back to work the following Monday, Janice from human resources said she needed to talk to him because he was supposed to be there on April 5 2013. She told him words to the effect that " you've been getting away, we are going to find something to stick on you and put in your file". J.A. 7.

Later that week, Janice, Larry Bullock, and Randall Hyde called him to the office and said they were going to have a meeting with him. Plaintiff asked them

could he record the meeting. They met among themselves for a few minutes and came back and told plaintiff that there would not be a meeting. J.A. 7.

That same week plaintiff had a conversation with McAlpine and told him it was not fair that he had to go through all of this.  McAlpine said he was going to have a meeting about management behavior. But, McAlpine also told him words to the effect that "you brought it on yourself". J.A. 7.

Even after that meeting with McAlpine, Randall Hyde and Larry Bullock would try to bully him.  They kept him isolated him by putting him in the back area, away from other employees.  They would daily and frequently come into his area and just stare at him for minutes, in an aggressive manner, like they wanted to fight. Plaintiff feared for his safety. J.A. 7.

Throughout this time, plaintiff sought help to end the harassment, but no one would and no one did help him. Plaintiff was stressed, depressed, humiliated and embarrassed on a daily basis.  After months of working in this environment, it became so unbearable that plaintiff was constructively discharged from his employment on April 15 2013. J.A. 7.

Plaintiff-Appellant Sharell Farmer brought this claim for retaliation under the federal False Claims Act's whistleblower protection provision, codified at 31 U.S.C. § 3730(h).   Defendant-Appellees Data Solutions & Technology (DST), Inc. and Eagle Systems and Services, Incorporated filed a Rule 12(b)(6) motion to

dismiss on September 29 2014 and November 10 2014, respectively, claiming, inter alia, that Plaintiff-Appellant had not engaged in conduct protected by the FCA's anti-retaliation provision. J.A. at 12, 65.  Plaintiff timely filed responses to each motion. J.A. at 31, 83.  On January 9 2015, the District Court granted Defendant-Appellees' motions to dismiss, finding that the plaintiff's conduct of reporting one act of theft by a warehouse supervisor, does not rise to the level of protected activity under the False Claims Act anti-retaliation provisions.   J.A. at 125.

The plaintiff-appellant timely filed Notice of Appeal on February 4 2015. J.A. 134.

## SUMMARY OF ARGUMENT

The plaintiff worked as a entry level supply clerk at an Army supply depot located at Fort Bragg, N.C.  The defendants are private contractors who have been entrusted with military grade federal government property such as night vision goggles. Plaintiff reported to upper management that he saw the warehouse manager steal several night vision goggles. Plaintiff reported the theft as part of an internal investigation into theft at the supply depot. As a result of reporting the theft, plaintiff was harassed until he subsequently quit the job.

Plaintiff's complaint asserts a claim under 31 U.S.C. § 3730(h) the False Claims Act's retaliation provisions. "**In 2009, Congress amended the statute to protect employees from being fired for undertaking "other efforts to stop" violations of the Act, such as reporting suspected misconduct to internal supervisors**".  (emphasis added). *Halasa v. ITT,* 690 F.3d 844; 847-848 (7th Cir. 2012). *Accord, Young v. CHS Middle East, LLC,* No. 13-2342, 2015 U.S. App. LEXIS 8732 (4th Cir., May 27, 2015)

In the instant action, the lower court erred when it dismissed the plaintiff's complaint pursuant to rule 12(b)(6), and holding that "the court agrees with defendants that plaintiff has failed to adequately allege that he engaged in protected activity because the reported theft does not give rise to a reasonably viable FCA action against either defendant."  J.A. at 125.

12

At the core of the lower court's error, is the failure to make a distinction between the allegations required to prove FCA fraud,  and the allegations required to obtain FCA protection.  The lower court analyzed the protected activity prong of plaintiff's retaliation claim, as if it were analyzing an FCA fraud action and held the plaintiff to the heightened pleading standard and burden of proof required for an FCA fraud claim.

The lower court's rationale was previously rejected by the supreme court when it stated that "**a well-pleaded retaliation complaint need not allege that the defendant submitted a false claim.**" *Graham County Soil & Water Conservation Dist. v United States ex rel. Wilson,* 545 U.S. 409, 125 S. Ct. 2444, 162 L. Ed. 2d 390 (2005).

On a motion to dismiss, the 12(b)(6) standard only requires that it is "plausible" that the plaintiff engaged in "other efforts" to stop one or more violations of the statute. *Young v. CHS Middle East, LLC,* No. 13-2342, 2015 U.S. App. LEXIS 8732 (4th Cir., May 27, 2015)

Under the terms of the federal contract, the defendants are contractually obligated to keep an accurate inventory of the items in the warehouse and distribute those items to army personnel pursuant to and consistent with the terms of the contract and all applicable laws.

An FCA fraud violation occurs when a person:

> (D) has possession, custody, or control of property or money
> used, or to be used, by the Government and knowingly delivers,
> or causes to be delivered, less than all of that money or
> property;

It is plausible that the plaintiff engaged in other efforts to stop one or more violations of the statute, when the plaintiff-appellant reported to upper management that the warehouse supervisor was participating in the theft of military grade government property.

The lower court also erred when it dismissed plaintiff's civil conspiracy claim. The court held that there is no underlying tort, since the FCA claim was dismissed. Reversal of the court on the FCA claim supports reversal of the lower court on the civil conspiracy claim.

Lastly, the court erred on dismissal of plaintiff's common law negligence claim based on the negligent dissemination of plaintiff's name during the internal investigation. The court dismissed the claim, holding that there was no statute that established a duty. The court erred when it failed to recognize that under North Carolina common law, employers, just like all other persons, owe a duty of reasonable care.

The trial court erred when it dismissed plaintiff's complaint under rule 12(b)(6).

## STANDARD OF REVIEW

On appeal, the district court's decisions on matters of law and statutory interpretation are subject to de novo review. See *In re Coleman*, 426 F.3d 719, 724 (4th Cir. 2005); *Commodity Futures Trading Comm'n v. Kimberlynn Creek Ranch, Inc.*, 276 F.3d 187, 191 (4th Cir. 2002) (finding that appellate courts apply de novo standard where entry of judgment raises legal questions regarding proper statutory interpretation).

This Court also reviews the District Court's grant of a defendant's Rule 12(b)(6) motion to dismiss with a de novo standard. *Gonzales v. State of Md. Dep't of Health & Mental Hygiene,* 28 Fed. App'x 324, 324 (4th Cir. 2004); *Korb v. Lehman*, 919 F.2d 243, 246 (4th Cir. 1990). A Rule 12(b)(6) motion to dismiss should be granted in very limited circumstances and only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Rogers v. Jefferson-Pilot Life Ins. Co*., 883 F.3d 324, 325 (4th Cir. 1989)).  Unlike the fraud claim, a retaliation claim [under the False Claims Act] is not subject to the heightened pleading standard of Rule 9(b); therefore, plaintiff need only satisfy Rule 8's notice pleading requirements to survive a motion to dismiss. *Young v. CHS Middle East, LLC,* No. 13-2342, 2015 U.S. App. LEXIS 8732 (4th Cir., May 27, 2015).

15

## ARGUMENT

**THE DISTRICT COURT ERRED WHEN IT HELD THAT PLAINTIFF'S REPORT OF THEFT OF FEDERAL GOVERNMENT PROPERTY BY THE WAREHOUSE SUPERVISOR OF A SUPPLY DEPOT FEDERAL CONTRACTOR, IS NOT PROTECTED CONDUCT UNDER THE FCA ANTI-RETALIATION PROVISIONS.**

The False Claims Act, (hereinafter FCA) provides protection for employees who are "threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter." (31 USCS § 3730(h)).

"The whistleblower provision, which Congress broadened in 2009, prohibits retaliation "because of lawful acts done . . . in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter." *Young v. CHS Middle East, LLC*, No. 13-2342, 2015 U.S. App. LEXIS 8732 (4th Cir., May 27, 2015),  31 U.S.C. § 3730(h).

"In 2009, Congress amended the statute to protect employees from being fired for undertaking "other efforts to stop" violations of the Act, such as reporting suspected misconduct to internal supervisors." *Halasa v. ITT*, 690 F.3d 844; 847-848 (7th Cir. 2012).

16

The plaintiff worked as a entry level supply clerk at an Army supply depot located at Fort Bragg, N.C.  The defendants are private contractors who have been entrusted with military grade federal government property such as night vision goggles. Plaintiff reported to upper management, that he saw the warehouse manager steal several night vision goggles. Plaintiff reported the theft as part of an internal investigation into theft at the supply depot. As a result of reporting the theft, plaintiff was harassed until he subsequently quit the job a year later.

Plaintiff's complaint asserts a claim under 3730(h)(1) the False Claims Act's retaliation provisions.   In a recent opinion, the Fourth Circuit stated that "to survive a motion to dismiss, plaintiffs bringing an anti-retaliation suit under the False Claims Act must plausibly allege that (1) they engaged in a protected activity; (2) the employer knew about these acts; and (3) the employer discharged them as a result of these acts." *Young v. CHS Middle East, LLC,* No. 13-2342, 2015 U.S. App. LEXIS 8732 (4th Cir., May 27, 2015) *citing*,  *Eberhardt v. Integrated Design & Const., Inc*., 167 F.3d 861, 866 (4th Cir. 1999).

"Notably, these allegations need pass only Civil Procedure Rule 8(a)'s relatively low notice-pleadings muster." *Young v. CHS Middle East, LLC,* No. 13-2342, 2015 U.S. App. LEXIS 8732 (4th Cir., May 27, 2015) *(citations omitted).*

The lower court dismissed the present action, holding that, "the court agrees with defendants that plaintiff has failed to adequately allege that he engaged in

17

protected activity because the reported theft does not give rise to a reasonably viable FCA action against either defendant." J.A. at 125. The court also stated that the "court concludes that plaintiff's belief that a simple theft of government property would alone trigger FCA liability is unreasonable." *Id.* The court also stated that "Plaintiff could not show that one act of theft constitutes fraud". *Id.*

The lower court failed to properly frame the issue. The question that the court needed to answer is not whether "a simple theft of government property would trigger FCA liability". Instead the question is whether **reporting** a "simple theft of government property" would trigger FCA **protection**.

At the core of the lower court's error, is the failure to make a distinction between the allegations required to prove FCA fraud, and the allegations required to obtain FCA protection. The lower court analyzed the protected activity prong of plaintiff's retaliation claim, as if it were analyzing an FCA fraud action and held the plaintiff to the heightened pleading standard and burden of proof required for an FCA fraud claim.

The lower court's rationale was previously rejected by the U.S. Supreme Court when it stated that "**a well-pleaded retaliation complaint need not allege that the defendant submitted a false claim.**" *Graham County Soil & Water Conservation Dist. v United States ex rel. Wilson*, 545 U.S. 409, 125 S. Ct. 2444, 162 L. Ed. 2d. 390 (2005).

18

For even a well-pleaded retaliation complaint need not allege that the defendant submitted a false claim…. By contrast, …well-pleaded 3730(a) and (b) [FCA FRAUD] actions…require a plaintiff to plead that the defendant submitted a false claim. *Graham* at 416.

"Protected activities include collecting information about a possible fraud, even before the plaintiff puts together all the pieces of the puzzle". *Mann v. Heckler & Koch Defense, Inc*., 630 F.3d 338, 343-44 (4th Cir. 2010) (quotation marks and citation omitted).  Protected activity includes "**reporting suspected misconduct to internal supervisors**."  (emphasis added). *Halasa v. ITT*, 690 F.3d 844; 847-848 (7th Cir. 2012).  "Courts have held that  internal reporting can rise to the level of protected activity. *Glynn v. EDO Corp*., 710 F.3d 209, 215 (4th Cir. 2013), *citing McKenzie v. BellSouth Telecomms., Inc*., 219 F.3d 508, 514-16   (6th Cir. 2000).

 In *Halasa v. ITT Educational Services, Inc*., 690 F.3d 844 (7th Cir. 2012), the Seventh Circuit on summary judgment review, held that plaintiff's investigation of claims of students receiving inappropriate assistance and altering of test scores was protected activity since it was done "presumably to ensure that ITT ended these practices and to prevent ITT from making any false certifications to the U.S. Department of Education." The court held that the conduct "would be sufficient to permit a trier of fact to find that the plaintiff engaged in "efforts to stop" potential FCA violations.  *Id.* @ 847-848.

19

As the court so eloquently stated in *Young v. CHS Middle East, LLC,* No.

13-2342, 2015 U.S. App. LEXIS 8732 (4th Cir., May 27, 2015):

> [A]t this stage, we are obligated to view only the [plaintiff's]
> pleadings, and to view them generously in the [plaintiff's]  favor.
> Doing so, we conclude that the [plaintiffs] have sufficiently pled that
> they engaged in protected activity, i.e., that they acted in furtherance of
> an action under, or in an effort to stop 1 or more violations of, the
> False Claims Act.  While the [plaintiff's] allegations may well be
> insufficient to state a False Claims Act fraud claim subject to Rule
> 9(b)'s heightened pleading standards, they make no such claim.
> Instead, they make only a retaliation claim subject to Rule 8(a)'s notice
> pleadings standard. *Young v. CHS Middle East, LLC,* No. 13-2342,
> 2015 U.S. App. LEXIS 8732 (4th Cir., May 27, 2015).

Pursuant to the provisions of the FCA, a violation of the FCA is committed

by "any person who":

> (A) knowingly presents, or causes to be presented, a false or
> fraudulent claim for payment or approval;
>
> (B) knowingly makes, uses, or causes to be made or used, a
> false record or statement material to a false or fraudulent claim;
>
> (C) conspires to commit a violation of subparagraph (A), (B),
> (D), (E), (F), or (G);
>
> (D) has possession, custody, or control of property or money
> used, or to be used, by the Government and knowingly delivers,
> or causes to be delivered, less than all of that money or
> property;
>
> (E) is authorized to make or deliver a document certifying
> receipt of property used, or to be used, by the Government and,
> intending to defraud the Government, makes or delivers the
> receipt without completely knowing that the information on the
> receipt is true;
>
> (F) knowingly buys, or receives as a pledge of an obligation or
> debt, public property from an officer or employee of the

20

> Government, or a member of the Armed Forces, who lawfully
> may not sell or pledge property; or
>
> (G) knowingly makes, uses, or causes to be made or used, a
> false record or statement material to an obligation to pay or
> transmit money or property to the Government, or knowingly
> conceals or knowingly and improperly avoids or decreases an
> obligation to pay or transmit money or property to the
> Government.
> 31 U.S.C. § 3729(a)(1).

It is "reasonably plausible" that the plaintiff engaged in "other efforts" to stop one or more violations of the statute when during an internal investigation, he reported that the warehouse manager was stealing government property.  Just like the plaintiff in _Halasa_, his conduct tended to "to ensure that [defendants] ended these practices and to prevent [defendants] from making any false certifications to the U.S."  When Farmer reported to upper management that the warehouse supervisor was participating in the theft of military grade government property, that conduct was protected activity under the FCA.

Subsections (D), (E) and (G)  squarely address the issue raised by this instant action.  The defendants have "possession, custody, or control of property or money used, or to be used, by the Government".  The statute is violated if defendant "knowingly delivers, or causes to be delivered, less than all of that money or property".  Plaintiff's internal report to upper management that the warehouse supervisor is stealing government property and converting it to his own use,  is an effort to stop a violation of the statute.

Ironically, the district court, in dismissing the complaint, provided examples of situations where the theft of government property could reasonably lead to a viable FCA fraud violation claim. The court noted that "theft of government property [falls] within the ambit of the FCA's liability provision [when] it is accompanied by making a fraudulent claim, filing a false record, knowingly delivering to the government less than all of its property, or other fraudulent circumstances set out in 3729(a)(1)(A)-(G)". J.A. 128.

Notifying upper management that warehouse management is stealing these goggles, could reasonably lead to tighter inventory controls that would prevent defendant from violating the FCA by delivering less than all of the property to the government. Notifying management that the warehouse supervisor is stealing government property could lead to dismissal of employees engaged in the conduct, thereby preventing theft and preventing the defendant from delivering less than all of the property to the government. Notifying management could lead to preventing other employees from engaging in theft for fear of being reported to upper management. These measures would reasonably lead to preventing the defendant from delivering "less than all the property" to the federal government. This conduct could reasonably lead to preventing the defendants from making, using, or causing to be made or used, "a false record or statement material to an obligation to ... transmit …property to the Government". Plaintiff's conduct squarely falls

22

within the protection of the statue since it is reasonably plausible that plaintiff's conduct was an effort to stop one or more violations of the FCA.

## THE DISTRICT  COURT ERRED WHEN IT ONLY APPLIED THE DISTINCT POSSIBILITY TEST

As the Supreme Court and this Circuit have observed, when Congress amends a statute, courts should presume it intends its amendment to change the law. See *Stone v. INS*, 514 U.S. 386, 397 (1995); *Brewster v. Gage*, 280 U.S. 327, 337 (1930); see also *Am. Nat'l Red Cross v. S.G.*, 505 U.S. 247, 263 (1992); *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979). Generally, courts assume that "[t]he deliberate selection of language ... differing from that used in the earlier Acts indicates that a change of law was intended." *Brewster*, 280 U.S. at 337.

When Congress amended the anti-retaliation provision of the FCA, it set off the new clause expanding the scope of protected activity from the old one by using the word "or."  Now, an employer may not retaliate against an employee who acts "in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter." 31 U.S.C. § 3730(h). The statute's plain language shows that while the old FCA anti-retaliation provision contemplated activity "in furtherance of an action" – litigation – the new clause also protects "other efforts". The District Court failed to consider this case under the other efforts analysis. But, instead,  only employed the distinct possibility standard.  JA. at 124.

23

The Fourth Circuit has recognized that the "other efforts" language from the 2009 amendment to the FCA, broadens the protections afforded FCA retaliation plaintiffs. *Young v. CHS Middle East, LLC,* No. 13-2342, 2015 U.S. App. LEXIS 8732 (4th Cir., May 27, 2015). The lower court erred when it failed to analyze plaintiff's claim consistent with the "other efforts" language included in the amended statute.

## THE PURPOSES OF THE FALSE CLAIMS ACT ARE ADVANCED BY A RULING THAT PROTECTED ACTIVITY INCLUDES REPORTING THEFT OF FEDERAL GOVERNMENT PROPERTY AT A MILITARY SUPPLY DEPOT BEING OPERATED BY A FEDERAL GOVERNMENT CONTRACTOR.

The theft of night vision goggles was the subject of testimony before the House Subcommittee on National Security and Foreign Affairs Committee on Oversight and Government Reform. During the subcommittee hearing the results of a General Accounting Office Investigation were revealed. The GAO investigation showed that government issued military goggles were being sold on the internet and that these sales subjected our military to increased risk. The report stated that the investigators purchased:

> Night vision goggles containing an image intensifier tube made to military specifications (milspec) that is an important component in the U.S. military's night-fighting system. Although night vision goggles are commercially available to the public, the milspec tube in the pair of goggles we purchased on eBay is a sensitive component that allows U.S. service members on the battlefield to identify friendly fighters wearing infrared (IR) tabs. We also purchased IR tabs from a different

24

> Internet seller. These IR tabs work with the goggles we purchased,
> giving us access to night-fighting technology that could be used against
> U.S. troops on the battlefield.
> *GAO-08-644T Internet Sales: Undercover Purchases on eBay and*
> *Craigslist …*(4/10/2008).

Moreover, in a criminal indictment, one pair of night vision goggles was valued by prosecutors at $6,972.00 dollars and the indictment alleged that it was sold on E-bay for $3,700.00 dollars. *USA v. Williams*, U.S. District Court, Arizona (Tucson Division), Case#: 4:08-cr-00600-JMR-BPV-1 (5/7/2008).

The Seattle Times newspaper reports numerous occasions when soldiers at Fort Lewis were confined to a military lockdown while searching for night vision goggles that were discovered missing.[2]

The False Claims Act was created to provide citizens with incentive to assist the federal government in exposing fraud, corruption, and yes, theft of federal government property.

"The retaliation provision of the FCA was designed to protect persons who assist the discovery and prosecution of fraud and thus to improve the federal government's prospects of deterring and redressing crime." U.S. ex rel. Schweizer v. Oce N.V., 677 F.3d 1228, 1237, 400 U.S. App. D.C. 284 (D.C. Cir. 2012).

---

[2] http://community.seattletimes.nwsource.com/archive/?date=19971002&slug=2563776; http://seattletimes.com/html/localnews/2002164636_webgoggles29.html

**THE DISTRICT COURT ERRED WHEN IT FAILED TO RECOGNIZE THAT THE DUTY OF REASONABLE CARE UNDER NORTH CAROLINA LAW IS A COMMON LAW DUTY**

To state a claim for common law negligence, a plaintiff must allege sufficient facts to show facial plausibility of each of these elements: (1) a legal duty; (2) a breach thereof; and (3) injury proximately caused by the breach." *Stein v. Asheville City Bd. of Educ.,* 360 N.C. 321, 328 (2006). (Also cited in Def. DST's Memo, J.A. 78).

The District court judge concluded that plaintiff did not state a claim for negligence because there was no statute that established the duty owed to plaintiff. J.A. 131.  Interestingly, neither defendant alleged the basis that the court used to dismiss the claim.  Both defendants, in their motion to dismiss, accepted for purposes of the motion that a common law duty existed to exercise reasonable care.  DST alleged that there were no factual allegations showing that plaintiff had any further contact with the supervisor, thus "no causation". (J.A. 78).  Eagle argued its motion "assuming arguendo that, under the circumstances as alleged, a duty exists under North Carolina law requiring Eagle to keep Plaintiff's identity confidential…" J.A. 27.

Plaintiff alleged that "defendants owed plaintiff a duty under North Carolina common law, to exercise reasonable care…" J.A. 9.

"Duty is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff; and in negligence cases, the duty is always the same- to conform to the legal standard of reasonable conduct in the light of apparent risk." 34 *W. Page Keeton et al., Prosser and Keeton on the Law of Tort* § 53 (5th ed. 1984).

The Fifth Circuit had occasion to consider a common law negligence claim similar to the claim made by plaintiff in this instant case. In an excellent analysis in *Johnson v. Sawyer* , 4 F.3d 369, 378 (5th Cir. Tex. 1993), the court explained that the common law negligence claim exists "completely independent" of any statutory duty. *Id.*

> In negligence cases, the duty is always the same--to conform to the legal standard of reasonable conduct in the light of apparent risk. …Under the instant facts, it was certainly foreseeable that the disclosure [of plaintiff's name] made by the IRS would harm [plaintiff]. Thus, the duty of the agents to conduct themselves reasonably in light of the obvious risk of harm to [plaintiff] also existed independently of [the statute]. *Johnson at* 378.

The lower court erred when it failed to recognize that the defendants owed plaintiff a duty of reasonable care under North Carolina common law.

**THE DISTRICT COURT ERRED WHEN IT DISMISSED PLAINTIFF'S CIVIL CONSPIRACY CLAIM BASED UPON ITS ERRONEOUS DISMISSAL OF THE PLAINTIFFS FCA RETALIATION CLAIM.**

The lower court stated, and plaintiff agrees that "Under North Carolina law, civil conspiracy is not an independent cause of action, as recovery must be based

27

on an underlying claim of unlawful conduct that defendants agreed to commit." *Toomer v. Garrett*, 574 S.E.2d 76, 92 (N.C. Ct. App. 2002) citing *Shope v. Boyer*, 150 S.E.2d 771 (N.C. 1966).

The lower court dismissed plaintiff's civil conspiracy claim because it dismissed the underlying tort, namely, plaintiff's FCA retaliation claim. The court ruled that since "plaintiff has not pled a viable retaliation claim under the FCA, … his civil conspiracy claim will be dismissed." JA. 132.

As stated herein, the lower court erred in dismissing the plaintiff's FCA retaliation claim. The reversal of the lower court on the plaintiff's FCA retaliation claim would necessitate a reversal of the lower court on plaintiff's civil conspiracy claim.

## CONCLUSION

The False Claims Act's anti-retaliation provision protects employees like the plaintiff-appellant, from being harassed and ultimately forced to quit his position as a supply clerk at a military supply depot run by private contractors. Appellant Farmer reported to upper management, as part of an internal investigation, that the warehouse supervisor was complicit in the theft of military equipment from the supply depot warehouse.  Farmer's conduct was protected conduct under the FCA's anti-retaliation provisions.  The lower court's dismissal of Farmer's complaint which alleged, inter alia, that he was harassed and forced to quit in retaliation for his report,  should be reversed by the Court of Appeals.

Plaintiff respectfully requests that the Court of Appeals reverse the lower court's dismissal of plaintiff's FCA retaliation claim, civil conspiracy claim and common law negligence claim.

This the 16th day of June 2015.

| | |
|---|---|
| /s/   Ralph T. Bryant, Jr. | /s/ Mario M. White |
| RALPH BRYANT, JR. | MARIO M. WHITE |
| Co-Counsel for Appellant | Co-Counsel for Appellant |
| P.O. Box 723 | P.O. Box 957 |
| Newport, NC 28570 | Clinton, NC 28329 |
| (252) 626-3267 Telephone | (910) 590-3300 Telephone |
| (910) 590-2928  Facsimile | (910) 590-2928  Facsimile |
| attorneyralphbryantjr@gmail.com | mwhitejustice@gmail.com |
| N.C. State Bar No. 18119 | N.C. State Bar No. 19341 |

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 15-1124          **Caption:** Farmer v. Eagle Systems & DST

## CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[✔] this brief contains _____6323_____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[ ] this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[✔] this brief has been prepared in a proportionally spaced typeface using
Microsoft Word _____ [*identify word processing program*] in
14 pt. Times New Roman _____ [*identify font size and type style*]; **or**

[ ] this brief has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*].

(s) /s/ Ralph T. Bryant, Jr. /s/ Mario M. White

Attorney for Appellant Farmer

Dated: 6/15/2015

# CERTIFICATE OF SERVICE

I hereby certify that on this day, I caused this Brief of Appellants and Joint Appendix to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users::

**Attorneys for Eagle Systems and Services Incorporated**
Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P.
Kerry A. Shad, NC Bar No. 18410
Jang H. Jo, NC Bar No. 35686
Post Office Box 2611
Raleigh, North Carolina 27602-2611
Telephone: (919) 821-1220
Facsimile: (919) 821-6800
E-Mail: kshad@smithlaw.com
jjo@smithlaw.com

**Attorneys for Defendant, Data Solutions & Technology (DST), Inc.**
Justin N. Davis
N.C. State Bar No.: 27780
jdavis@mhc-law.com
Nancy B. Paschall
N.C. State Bar No.: 12872
npaschall@mhc-law.com
Mullen Holland Cooper, P.A.
301 S. York St.
PO Box 488
Gastonia, North Carolina 28053
Telephone No.: (704) 864-6751
Facsimile No.: (704) 861-8394

This the 16th day of June 2015.

Mario M. White
Attorney at Law

/s/ Mario M. White
Mario M. White
N.C. State Bar #: 19341
Attorney for Appellant
Post Office Box 957
Clinton, North Carolina 28329
(910) 590-3300 Phone
(910) 590-2928 Fax

31